**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

MARTA SANCHEZ; THE ESTATE OF STEPHANIE
LOPEZ; and, DOMINIC MARTINEZ;

Civil Action No.: 19-cv-01871

Plaintiff,

v.
CITY OF LITTLETON,
    and
DOUG STEPHENS, POLICE CHIEF OF LITTLETON, IN
HIS OFFICAL CAPACITY,
    and
ANTHONY GUZMAN, INDIVIDUALLY,
    and
LUKE MCGRATH, INDIVIDUALLY,
    and
JOSEPH CARNS, INDIVIDUALLY,
    and
CITY OF ENGLEWOOD,
    and
JOHN   COLLINS, POLICE CHIEF OF ENGLEWOOD,
IN HIS OFFICAL CAPACITY,
    and
BRIAN MARTINEZ, INDIVIDUALY,

Defendants.

**CIVIL RIGHTS COMPLAINT WITH REQUEST FOR TRIAL BY JURY**

NOW COMES Plaintiffs Marta Sanchez, the Estate of Stephanie Lopez, and Dominic

Martinez, by and through their attorneys, the Law Office of Judge Lang & Katers, LLC and Gende

Law Office, S.C., complain against Defendants and request trial by jury as follows:

**I.      INTRODUCTION**

1.      This is an action brought by Marta Sanchez, the Estate of Stephanie Lopez, and Dominic Martinez, to vindicate profound deprivations of their Constitutional rights caused by Police brutality.

2.      That on or about June 29, 2017, at around midnight in the city of Littleton, the Littleton Police Department received a 911 call that a car had been stolen.

3.      That City of Littleton Police Officer, Luke McGrath observed what he believed to be the stolen vehicle in a Shell Gas Station in the City of Littleton on South Santa Fe Drive.

4.      That City of Littleton Police Officer Joseph Carns upon information and belief observed the same stolen vehicle northbound on Santa Fe Drive in the City of Littleton and at some point, that same evening pulled in behind the alleged stolen vehicle.

5.      That City of Littleton Police Officer Anthony Guzman upon information and belief received a command over the radio from Littleton Police Commander to pursue the alleged stolen vehicle. Officer Anthony Guzman proceeded to fall in behind Officer Carns to follow the alleged stolen vehicle.

6.      That the vehicle being pursued was driven by Marta Sanchez, with Stephanie Lopez in the front passenger seat and Dominic Martinez located in the back rear seat.

7.      That the vehicle driven by Sanchez slowed at South Santa Fe Drive and East Arkansas Avenue upon information and belief in the City of Littleton were Defendant Officer Carns executed a PIT maneuver on the vehicle by making contact with his squad car in Sanchez's rear right corner.

8.      That Sanchez's vehicle is stopped by Officer Carnes, with Officer Guzman and McGrath in close proximity to said vehicle.

9.      That Guzman fired 9 shots at the Sanchez vehicle from his 40 caliber 22 Glock, and Officer McGrath fired seven times into said vehicle with his 9 mm handgun.

10.     That the vehicle driven by Sanchez after having sixteen (16) shots fired into it proceeded to pull away and drive East on Arkansas Avenue. That Sanchez's vehicle proceeded to 1233 South Bannock Street, upon information and belief in the City of Englewood. That said car was rear ended by Officer Guzman and came to a stop.

11.     That while the vehicle was stopped, Defendant Carnes fired his weapon five (5) times into the Sanchez vehicle. That Defendant Guzman also fired his weapon into the car.

12.     Sanchez briefly placed the car in reverse and drove South on Bannock Street. That Defendant Guzman proceeded to follow the Sanchez vehicle and while approaching Louisiana Avenue in the City of Denver, Guzman rammed into the Sanchez vehicle causing it to collide with a pole.

13.     That while the vehicle was stopped, Defendant Guzman proceeded to fire twenty-one (21) shots into the stalled vehicle and Defendant Martinez of the Englewood Police Department fired his weapon five (5) times into the Sanchez vehicle.

14.     That Sanchez was apprehended at this location from the automobile in the City of Denver and sustained thirteen (13) to fourteen (14) bullet wounds from the Defendant's firing into the automobile she was driving. Sanchez as a result of the bullet wounds is now paralyzed.

15.     That Plaintiff Stephanie Lopez was shot in the right back side of her head which allegedly came from Defendant Carns' firearm during the 1233 Bannock Street stop, which lead to her demise. She also was shot several other times by these Defendants.

16. That Plaintiff Dominic Martinez was shot, by the police and during the pursuit jumped out of the Sanchez vehicle. Martinez was not apprehended by the Police until latter the next day.

17. In Concert or conspiracy, the Defendants maliciously and with deliberate indifference, baselessly caused the death of Stephanie Lopez, the quad-paraplegic of Marta Sanchez and the injuries to Dominic Martinez.

## II. JURISDICTION, VENUE, AND NOTICE

18. This action arises under the Constitution and Laws of the United States, including Article III, section 1 of the United States constitution and is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

19. That this Court has supplemental jurisdiction over all state law claims which arise out of the same facts common to Plaintiffs' federal claims pursuant to 28 U.S.C. § 1367.

20. That the amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars, exclusive of costs, interests, and attorneys' fees.

21. This cause is instituted in the United States District Court for the District of Colorado pursuant to all relevant events and omissions occurred and in which Defendants maintain officed and/ or reside.

## III. PARTIES

22. At all times relevant hereto, Plaintiff Marta Sanchez ("Sanchez") was a resident of the State of Colorado and a Citizen of the United States whose constitutional, federal, and state rights were violated by the Defendants. At all times material hereto, Lopez was a resident of the

State of Colorado and a Citizen of the United States entitled to all rights, privileges, and immunities accorded by the Constitution of the United States.

23.     At all times relevant hereto, Plaintiff, the Estate of Stephanie Lopez, represents the decedent, Stephanie Lopez ("Lopez") whose constitutional, federal, and state rights were violated by the Defendants.  At all times material hereto, Lopez was a resident of the State of Colorado and a Citizen of the United States entitled to all rights, privileges, and immunities accorded by the Constitution of the United States.

24.     At all times relevant hereto, Plaintiff Dominic Martinez ("Martinez") was a resident of the State of Colorado and a Citizen of the United States whose constitutional, federal, and state rights were violated by the Defendants.  At all times material hereto, Martinez was a resident of the State of Colorado and a Citizen of the United States entitled to all rights, privileges, and immunities accorded by the Constitution of the United States.

25.     At all times relevant hereto, Defendant City of Littleton hereinafter "Defendant Littleton" is a Colorado Municipal Corporation and is the legal entity responsible for itself and for the Littleton Police Department. This Defendant is also the employer of the individual Defendants, Anthony Guzman, Luke McGrath, Joseph Carns, and Doug Stephens and is a proper entity to be sued under 42 U.S.C. § 1983.

26.     At all times relevant hereto, Defendant Doug Stephens ("Stephens") was a Citizen of the United States and a resident of the State of Colorado and was acting under color of the State Law and within the scope of his employment in his capacity as Chief of Police of Littleton employed by the Defendant City of Littleton, who as chief of police instructed, trained and was in charge of Defendants Anthony Guzman, Luke McGrath, and Joseph Carns. Defendant Stephens is also sued individually.

27.     At all times relevant hereto, Defendant Anthony Guzman ("Guzman") was a Citizen of the United State and resident of the State of Colorado and was acting under color of state law and scope of employment in his capacity as a Law enforcement officer and employed by Defendant City of Littleton and/or of the Littleton Police Department. Defendant Guzman is sued individually.

28.     At all times relevant hereto, Defendant Luke McGrath ("McGrath") was a citizen of the United States and resident of the State of Colorado and was acting under color of state law in his capacity as a Law enforcement officer and employed by Defendant City of Littleton and/or of the Littleton Police Department. Defendant McGrath is sued individually.

29.     At all times relevant hereto, Defendant Joseph Carns ("Carns") was a Citizen of the United States and resident of the State of Colorado and was acting under color of state law in his capacity as a Law enforcement officer and employed by Defendant City of Littleton and/or of the Littleton Police Department. Defendant Carns is sued individually.

30.     Defendant City of Englewood hereinafter, "Defendant Englewood" is a Colorado Municipal Corporation and is the legal entity responsible for itself and for the Englewood Police Department. This Defendant is also the employer of the individual Defendants John Collins and Brian Martinez and is a proper entity to be sued under 42 U.S.C. § 1983.

31.     At all times relevant hereto, Defendant John Collins ("Collins") was a Citizen of the United States and a resident of the State of Colorado and was acting under color of State Law in his capacity as Chief of Police for the City of Englewood Police Department employed by the City of Englewood  and/or the Englewood Police Department, where as Chief of Police instructed, trained and was in charge of Defendant Brian Martinez. John Collins is sued in his individual capacity also.

32.     At all times relevant hereto, Defendant Brian Martinez ("Officer Martinez") as a Citizen of the United States and a resident of the State of Colorado and was acting under color of

State law in his capacity as a law enforcement officer employed by the Defendant City of Englewood and/or of the Englewood Police Department. Defendant Officer Martinez is sued individually.

## IV.    STATEMENT OF FACTS

33.    Plaintiffs incorporate all of the preceding paragraphs, including allegations in the Introduction as if they were fully set forth again at this point.

34.    That Littleton Police Department received a report of a stolen car from a Dunkin Donuts in the 4170 Mineral Avenue located in the City of Littleton after 11:00 P.M. on June 29, 2017.

35.    That Defendant McGrath received the report of the stolen automobile from Dunkin Donuts on June 29, 2017 and proceeded North from the Dunkin Donuts towards the City of Englewood.

36.    That Sanchez was the operator of a white automobile driving North on Santa Fe Avenue, towards the City of Englewood. That Lopez was seated in the front passenger seat, with Martinez in the rear back seat of said automobile.

37.    That Defendant McGrath in his marked City of Littleton squad car observed the white automobile driven by Sanchez in a Shell Gas Station.

38.    That said vehicle driven by Sanchez was driving North on Santa Fe Drive in Littleton. That Defendant Carns pulled his marked squad car behind the vehicle driven by Sanchez, with Defendant Guzman following in his squad car some distance back of Carns and McGrath following Guzman in his marked squad car.

39.     That an unmarked Lieutenant Police Commander from the City of Littleton ordered the Littleton Police Officers Guzman, Carns, and McGrath to follow the automobile driven by Sanchez.

40.     That Defendant Carns would also request from his Lieutenant Police Commander permission to perform a PIT Maneuver on the Vehicle driven by Sanchez. A PIT Maneuver is a means of making contact by the squad car and the vehicle being chased or pursued.

41.     That at or about midnight or June 29, 2017, Defendant Carns requested permission to perform a PIT maneuver on the vehicle driven by Sanchez in the area of Santa Fe Drive and East Arkansas Avenue as Sanchez was slowing down.

42.     Carns squad car struck the rear end of the car driven by Sanchez with Martinez and Lopez in said vehicle, causing the vehicle to spin nearly 180 degrees coming to a rest on South Santa Fe Drive.

43.     That the squad car driven by Carns blocked the Plaintiffs Vehicle to the West, McGrath's Car parked them into the North, while Guzman blocked them in to the South.

44.     That Guzman exited his vehicle to the South and drew his service weapon, walking toward Plaintiffs' vehicle and opened fire on said vehicle without a warning and without being in imminent danger. Guzman fired his 40 Caliber, 22 Glock at least nine (9) times into the Plaintiffs' vehicle.

45.     That at the time Guzman fired into the Plaintiff vehicle it wasn't moving and at least one person, Plaintiff Martinez, had his hands up in the back seat.

46.     That Defendant Carns to West of Plaintiffs' stopped vehicle exited his vehicle and fired his 9 mm, Glock .34 caliber into the Plaintiff's vehicle without a warning and not being in imminent danger.

47.     That Defendant McGrath to the North of Plaintiffs stopped vehicle exited his vehicle and fired his 9 mm s+s handgun into the Plaintiffs' vehicle without a warning and not being in imminent danger. That McGrath fired at least seven (7) times into the Plaintiffs' vehicle while it was stopped. That most if not all of McGrath's shots were from the back or side of Plaintiffs' vehicle.

48.     That when all Defendants were firing their weapons into Plaintiffs' car it was not moving, was not being used as a weapon, nor were the Plaintiffs using or displaying a firearm at the Officers.

49.     That Plaintiffs' vehicle after receiving several shots from these officers started moving again and was seen on video slowly driving North on Sana Fe toward the intersection.

50.     Officer Guzman by his own statement walked to the right as Plaintiffs' car drove past him. The video also shows Defendant Guzman firing at the said vehicle of Plaintiffs after it is driving away from Guzman and the scene.

51.     That Plaintiffs, afraid of the gunfire directed at the vehicle, started their vehicle slowly and proceeded to travel southeast toward Arkansas Avenue. That Plaintiffs turned left of South Bannock, with the three Defendant Officers, Guzman, Carns, and McGrath following behind the vehicle. That Plaintiffs continued North on South Bannock to West Mississippi Avenue making a U-turn when Officers Guzman, Carns, and McGrath conducted another PIT maneuver by striking the behind of Plaintiff's vehicle. This PIT maneuver was conducted by Guzman upon information and belief.

52.     That Plaintiffs' vehicle after being contacted in the rear right passenger side came to a rest at 1233 South Bannock Street after completing a full spin and coming to rest perpendicular on Bannock Street.

53.     The Plaintiffs' car has suffered significant damage after the gun shots to the vehicle. That Plaintiff Martinez in the rear passenger seat, during the gun fire on Sana Fe Avenue removed himself from the vehicle afraid of being killed and after suffering from a gun shot wound himself.

54.     Martinez was not apprehended until the next morning by the Police as he jumped out of the car because the Defendant Police Officers would not stop firing at them without warning, while Martinez held his hands up in the automobile.

55.     That after the second PIT maneuver is performed by Guzman, Defendant Carns blocked Plaintiffs' vehicle to the North, while Guzman is parked to the East of Plaintiffs' vehicle, and McGrath does not exit his vehicle, which was to the West.

56.     That Guzman got out of his vehicle and immediately un-holstered his weapon aimed at the Plaintiffs' stopped vehicle and immediately started to discharge his weapon without warning, nor was he in imminent danger.

57.     That Plaintiffs' vehicle reversed shortly and proceeded to drive South on Bannock Street the same way it had come in.

58.     That when the Plaintiffs' vehicle was stopped after the second PIT maneuver, Defendant Carns was positioned to the North of Plaintiffs' vehicle, by the passenger side and rear of said vehicle opened fire multiple times on the vehicle without warning and without fearing for his own life or being in imminent danger. Plaintiffs' vehicle at said time was not being used as a weapon nor was their any sign that the Plaintiffs' vehicle had a weapon.

59.     That Defendant Carns fired multiple times into said vehicle with his 9mm Glock .34, which autopsy of Stephanie Lopez would show that her fatal wounds to the right back said of her head came from the 9mm Glock .34, used by Defendant Carns.

60.     That at least five (5) shots were fired into the vehicle by Carns at this stop.

61.     Next Plaintiffs' vehicle proceeded to drive South on Bannock and made a wide right turn right before the intersection, when Defendant Guzman pushed down on his accelerator and collided with Plaintiffs vehicle causing it to collide with a pole and making the car inoperable.

62.     That Guzman after colliding with Plaintiffs' vehicle ran out of his car and kept firing his weapon at the Plaintiffs' vehicle which wasn't moving and was inoperable. Plaintiffs' vehicle did not use or show any weapons towards Guzman or other Defendants. This collision was not a PIT maneuver but a use of deadly force.

63.     That Defendant Guzman at this scene emptied his weapon and reloaded it at least once. At least twenty-one (21) shell casings were found at this scene from Guzman's 40 Cal. 22 Glock.  Many of these shots were fired from the backside of Guzman's car and into the back and side of Plaintiff's car.

64.     Defendant Officer Martinez, a Police Officer from the City of Englewood arrived on the scene as the Plaintiffs were stopped and inoperable after striking the pole.

65.     Officer Martinez exited his vehicle with no warning given to the Plaintiffs' vehicle and observed Guzman discharging his weapon into Plaintiffs' car. Officer Martinez then fired several shots into the Plaintiffs' vehicle.

66.     Plaintiffs were not driving their car at Martinez or Guzman and were never given warnings before these shots were fired by Guzman and Martinez. The Plaintiffs did not show or discharge a weapon at the Defendants. In fact, Lopez was deceased in the lap of Sanchez and Martinez had already removed himself from the automobile, without the knowledge of the Defendants because they are too busy firing at said vehicle.

67.     Officer Martinez after discharging his weapon into the vehicle noticed that Sanchez was holding her hands in the air and shouted to Guzman to hold his fire because their hands were up.

68.     Sanchez held her hands up during the three separate stops, but this was not observed until Officer Martinez saw her on the last stop at Louisiana Avenue.

69.     The Plaintiffs' vehicle at the time of apprehension on Louisiana Avenue was inoperable. Sanchez upon apprehension had fourteen (14) bullet wounds to her body, on her left cheek area, at least four (4) to her chest area, and 3-4 more in her spinal cord and rib area. She also had several gun shot wounds to her shoulder, arm and several to her left tibia and fibula, leaving her as a quad-paraplegic.

70.     Plaintiff Martinez suffered a gun shot wound to his leg, while Lopez suffered several gun shot wounds to her body with a fatal shot being to the right back side of her head.

71.     That at least forty-four (44) shell casings were found at the scenes of the stops from the weapons of Defendants Martinez, Carns, Guzman, and McGrath. These were just the number of shell casings found but not the number of actual shots fired by the Defendant Officers.

72.     That upon information and belief John Collings was the Chief of Police for the Englewood Police Department and was in charge of Officer Martinez and of his training and education.

73.     That upon information and belief Doug Stephens was the Chief of Police for the City of Littleton Police Department as was in charge of Officers Carns, Guzman, and McGrath and of their training and Education.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
42 U.S.C. § 1983 – Excessive Force in violation of the Fourth and Fourteenth Amendments

(Against Defendants Guzman, McGrath, Carns, Martinez)

74.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

75.     Plaintiffs in this action are/were citizens of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

76.     All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as Littleton and Englewood police officers and their acts or omissions were conducted within the scope of their official duties or employment.

77.     At the time of the complained events, Plaintiffs had a clearly established constitutional right under the Fourth Amendment to be secure in their persons from unreasonable seizure through excessive force.

78.     Plaintiffs also had the clearly established Constitutional right under the Fourteenth Amendment to bodily integrity to be free from excessive force by law enforcement.

79.     Any reasonable police officer knew or should have known of these rights at the time of the alleged conduct as they were clearly established at that time.

80.     Defendants Guzman, McGrath, Carns, and Martinez' actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated these Fourth Amendment rights of Plaintiffs.

81.     Defendants Guzman, McGrath, Carns, and Martinez' actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to the Plaintiffs' federally protected rights. The force used by these Defendant officers shocks the conscience and violated these Fourteenth Amendment rights of Plaintiffs.

82.     Defendants Guzman, McGrath, Carns, and Martinez unlawfully seized the Plaintiffs by means of objectively unreasonable, excessive and conscious shocking physical force, thereby unreasonably restraining Plaintiffs from their freedom and in Stephanie Lopez' case, her life.

83.     The force used constituted deadly force in that it did cause death and serious bodily injury, and could have caused further death or serious bodily injury.

84.     None of the Defendant officers took reasonable steps to protect the Plaintiffs from the objectively unreasonable and conscious shocking excessive force of other Defendant officers despite being in a position to do so. They are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscious shocking force of each other officer.

85.     Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of the Plaintiffs' federally protected constitutional rights.

86.     They did so with shocking and willful indifference to the Plaintiffs' rights and were consciously aware that their actions would cause Plaintiffs sever physical and emotional injuries.

87.     The acts or omissions of all individual Defendants were moving forces behind Plaintiffs' injuries.

88.     The acts or omissions of Defendants as described herein intentionally deprived the plaintiffs of their constitutional rights and cause them other damages.

89.     These individual Defendants are not entitled to qualified immunity for the conduct alleged.

90.     The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiffs.

91.     As a proximate result of Defendants' unlawful conduct, Plaintiff Marta Sanchez has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Sanchez has incurred special damages, such as paralysis, including medically related expenses and will continue to incur further medical and other special damages related expenses, in amounts to be established at trial.

92.     On information and belief, Sanchez will suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained amount stemming from her paralysis, in amounts to be ascertained in trial.

93.     As a proximate result of Defendants' unlawful conduct, Plaintiff Stephanie Lopez was unlawfully killed entitling her estate to compensatory and special damages, in amounts to be determined at trial.

94.     As a proximate result of Defendants' unlawful conduct, Plaintiff Dominic Martinez has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.

95.     All Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

96.     In addition to compensatory, economic, consequential and special damages, all Plaintiffs are entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of the Plaintiffs.

**SECOND CLAIM FOR RELIEF**
Violation of 42 U.S.C. § 1983 – Monell Violations

(Against the City of Littleton, Defendant Stephens, Defendant John Collins,
and the City of Englewood).

97.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

98.    Defendant City of Littleton, Defendant Stephen, Defendant John Collins, and Defendant the City of Englewood were, at all times relevant, policymakers for the city of Littleton and Englewood and their respective police departments, and in that capacity established policies, procedures, customs, and/or practices for the same.

99.    These Defendants developed and maintained policies, procedures, customs and/or practices of exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of the Plaintiffs' constitutional and federal rights as set forth herein and in other claims, resulted from conscious or deliberate choice to follow a course of action.

100.   These Defendants have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of the Plaintiffs and the public.

101.   In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

102.    The deliberately indifferent training and supervision provided by the Defendants resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendants and were moving forces in the constitutional and federal violation injuries complained of by the Plaintiffs.

103.    As a proximate result of Defendants' unlawful conduct, Plaintiff Marta Sanchez has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Sanchez has incurred special damages, such as paralysis, including medically related expenses and will continue to incur further medical and other special damages related expenses, in amounts to be established at trial.

104.    On information and belief, Sanchez will suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained amount stemming from her paralysis, in amounts to be ascertained in trial.

105.    As a proximate result of Defendants' unlawful conduct, Plaintiff Stephanie Lopez was unlawfully killed entitling her estate to compensatory and special damages, in amounts to be determined at trial.

106.    As a proximate result of Defendants' unlawful conduct, Plaintiff Dominic Martinez has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.

### THRID CLAIM FOR RELIEF
Negligence
(Against All Defendants)

107.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

108.    Defendants intentionally and negligently seized Plaintiffs using excessive and deadly force without lawful privilege against Plaintiffs' consent, causing injury and death.

109.    That Defendant undertook and owed Plaintiffs a duty to conform to a standard of care, to ensure that they did not deprive Plaintiffs of their liberties without valid basis or use of unnecessary force.

110.    Notwithstanding the aforementioned duties, Defendants treated Plaintiffs in a manner that was negligent, careless, reckless, and without concern for their safety.

111.    Defendants failed to adequately train officers; failed to develop and implement proper policies and procedures for use of deadly force and arrests, and failed to have some method, policy practice, and/or procedure in regard to use of deadly force while in pursuit of suspects.

112.    Defendants engaged in conduct that was so negligent, careless, and reckless that it demonstrated a substantial lack of concern by failing to implement policies and procedures concerning the training of officers by, including, but not limited to:

    a.    Failing to properly train officer to properly assess and determine when use of force is necessary when confronting an idle vehicle;

    b.    Negligently, carelessly, and recklessly using deadly force when discharging a firearm;

    c.    Negligently, carelessly, and recklessly using deadly force with a police vehicle;

    d.    Negligently, carelessly, and recklessly hiring, training, maintaining, and implementing competent police officers;

    e.    Negligently, carelessly, and recklessly failing to discipline, instruct, supervise, and/or control the conduct of officers, thereby encouraging the wrongful acts and omissions complained of herein; and,

    f.    Negligently, carelessly, and recklessly allowing a custom and/or practice within their police departments of deliberate indifference to constitutional and federal rights.

113.    That as a direct and proximate result of the negligent, careless, and reckless disregard for the Plaintiffs' safety and well-being, Plaintiffs suffered injuries and damages including, but no limited to the following:

a. Emotional distress, psychological distress, and mental anguish;
b. Physical pain and suffering;
c. Loss of companionship;
d. Loss of future enjoyment of life;
e. Fright and shock;
f. Denial of social pleasure and enjoyment;
g. Embarrassment, humiliation, and mortification,
h. Reasonable expenses of necessary medical care, treatment and services;
i. Constitutional violations;
j. Death;
k. Punitive damages for Defendants' willful conduct; and,
l. Any and all other damages.

## FOURTH CLAIM FOR RELIEF
Wrongful Death/Survival Statute (CRS § 13-21-201; 202)
(By Plaintiff the Estate of Stephanie Lopez Against Defendants Guzman,
McGrath, Carns, and Martinez)

114.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

115.    That Stephanie Lopez' death was caused by Defendants' wrongful acts, negligence, and/or improper conduct.

116.    That if Stephanie Lopez' death had not ensued, she would have been able to bring a claim against the above-named Defendants for violations of Title 42 of the United States Code, Sections 1983 and 1985 for violations of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and her rights under the Colorado Constitution and Colorado Common law.

## VI.    DEMAND FOR JURY TRIAL

117.    The Plaintiffs demand trial by jury.

## VII.    PRAYER FOR RELIEF

Plaintiffs pray that this Court enter judgment for the Plaintiffs against each of the Defendants and grant:

A.     compensatory and consequential damages, including damages for emotional distress, humiliation, loss of life, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B.     Economic losses on all claims allowed by law;

C.     Special damages in an amount to be determined at trial;

D.     Punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

E.     Attorneys' fees and the costs associated with this action under 42 U.S.C. §    1988, including expert witness fees, on all claims allowed by law;

F.     Pre- and post-judgment interest at the lawful rate; and,

G.     Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

Respectfully submitted this 27th day of June, 2019.

Judge, Lang & Katers, LLC

By:  s/ David J. Lang
        David J. Lang (WI SBN: 1001218)
        Christopher P. Katers (WI SBN: 1067557)
        Kevin Raasch (WI SBN: 1100196)
        JUDGE LANG & KATERS, LLC.
        8112 W. Bluemound Road, Ste. 101
        Wauwatosa, WI 53213
        P: (414) 777-0778
        F: (414) 777-0776
        ckaters@jlk-law.com
        kraasch@jlk-law.com
        dlang@jlk-law.com
        Attorneys for Plaintiffs

        -and-
        Gende Law Office, S.C.

        By:  s/ James J. Gende II
        James J. Gende II (WI SBN: 1030921)
        Matt Harding (WI SBN:
        GENDE LAW OFFICE, S.C.
        N28W2300 Roundy Dr., Ste. 200
        Pewaukee, WI 53072

P: (262) 970-8500
F: (262) 970-7100
JGende@jamesgendelaw.com
(Admission Application forthcoming)
Attorneys for Plaintiffs